Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMMAD FAIZ AHMAD, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>U.S. CITIZENSHIP & IMMIGRATION SERVICES, *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 23-3332 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiffs Mohammad Faiz Ahmad, Aqsa Kanwal, and Abdul Hadi (together, "Plaintiffs")—all citizens of India—applied for asylum in the United States on March 1, 2021. (D.E. No. 1 ("Compl." or "Complaint") ¶¶ 5–7 & 13). Their applications for asylum have not yet been adjudicated and remain pending. (*Id.* ¶ 14). Plaintiffs initiated this suit against the United States Citizenship and Immigration Services (the "USCIS") and the United States Department of Homeland Security ("DHS") (together, "Defendants"), alleging that Defendants' ongoing failure to timely adjudicate their asylum applications violates the (i) Mandamus Act, 28 U.S.C. § 1361; (ii) Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 555 and 701; (iii) Fifth Amendment to the United States Constitution; and (iv) Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.* ¶¶ 29–57). Plaintiffs request, *inter alia*, that this Court (i) declare that Defendants' delays in scheduling their asylum interviews and in adjudicating their applications is unlawful; and (ii) order Defendants to schedule an asylum interview for Plaintiffs within 30 days. (*Id.* at 7). Before the Court is Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. No. 6 ("Motion")). Having considered

the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion is **GRANTED** and Plaintiffs' Complaint is dismissed in its entirety *without prejudice*.

## I. BACKGROUND

### A. Statutory Background

The Immigration and Nationality Act (the "INA") provides that immigrants may apply for asylum within one year of arrival in the United States. *See* 8 U.S.C. § 1158(a). To obtain relief, an asylum applicant must establish that he or she either experienced past persecution or has a well-founded fear of future persecution on account of his or her race, religion, nationality, membership in a particular social group, or political opinion. *Id.* §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). If the applicant satisfies this burden, the Secretary of Homeland Security or the Attorney General has discretion to grant asylum. *Id.* § 1158(b)(1)(A). The INA instructs that, absent exceptional circumstances, an initial interview of an asylum applicant shall commence within forty-five days of the filing of the application and that adjudication of the application shall be completed within 180 days of its filing. *Id.* § 1158(d)(5)(A)(ii)-(iii). However, § 1158(d)(7)—entitled "No private right of action"— expressly provides that "[n]othing in [§ 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).

### B. Factual Background

According to the Complaint, Plaintiffs are all citizens of India currently residing in Piscataway, New Jersey. (Compl. ¶¶ 5–7). Plaintiffs allege that they are a family comprised of Plaintiff Ahmad, his wife, and their son. (*Id.* ¶ 13). Prior to entering the United States, Plaintiff Ahmad alleges that he was a victim of past persecution in India and states that he had a well-

founded fear that his life would be in danger were he to stay in India. (*Id.* ¶ 11). Accordingly, on August 7, 2020, Plaintiffs lawfully entered the United States through visitors' visas. (*Id.* ¶ 12). On March 1, 2021, due to their fear of returning to India, each Plaintiff filed an affirmative Form I-589 asylum application with USCIS. (*See id.* ¶ 13; D.E. No. 1-2, Ex. A to Compl.). Plaintiffs allege that each of their applications have not yet been adjudicated. (Compl. ¶¶ 14–15). More specifically, they allege that they have not yet received notice of a scheduled interview despite the fact that their asylum applications have been pending for years. (*See id.*). Plaintiffs allege that because of the adjudication delays, they have suffered "emotional, financial, and physical, hardship" and are "unable to make personal decisions within their family unit." (*Id.* ¶¶ 23 & 25).

### C. Procedural History

Plaintiffs initiated this action on June 16, 2023, alleging that Defendants' ongoing failure to timely adjudicate their asylum applications violates the (i) Mandamus Act; (ii) APA; (iii) Fifth Amendment to the United States Constitution; and (iv) Declaratory Judgment Act. (*Id.* ¶¶ 29–57). Plaintiffs request that this Court (i) declare that Defendants' delay in scheduling their asylum interviews and in adjudicating their applications is unlawful; and (ii) order Defendants to schedule an asylum interview for Plaintiffs within 30 days. (*Id.* at 7). On October 25, 2023, Defendants filed a motion to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Motion; D.E. No. 6-1 ("Mov. Br.")). The Motion is fully briefed. (D.E. No. 11 ("Opp. Br."); D.E. No. 12 ("Reply")).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

The Court can adjudicate a dispute only if it has subject matter jurisdiction to hear the asserted claims. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Rule 12(b)(1)

governs jurisdictional challenges to a complaint." *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016). "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). In deciding a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a court must first determine whether the party presents a facial or factual attack, because the "distinction determines how the pleading [is] reviewed." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (internal quotation marks and citation omitted). An attack is facial where the defendant "attacks the complaint on its face without contesting its alleged facts." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). In assessing a facial challenge, the Court accepts the factual allegations as true. *See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).[1]

### B. Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset*

---

[1] In their moving brief, Defendants appeared to suggest that they were raising a facial challenge to subject matter jurisdiction by setting forth the standard for a facial attack of subject matter jurisdiction and explaining what documents the Court could properly consider in evaluating a facial challenge. (Mov. Br. at 11 & 11 n.28). Nevertheless, Defendants appear to suggest in reply that their attack on subject matter jurisdiction is factual. (Reply at 3). However, in contending that the Court lacks subject matter jurisdiction over Plaintiffs' Mandamus Act claim, Defendants only rely on the allegations in Plaintiffs' Complaint as well as publicly available information on USCIS's website. (*See* Mov. Br. at 12–18). As such, the Court treats Defendants' motion as raising a facial challenge to subject matter jurisdiction. *Fitterer v. Resurgent Cap. Servs. L.P.*, No. 21-19068, 2024 WL 1810027, at *3 (D.N.J. Apr. 25, 2024) (stating that "even when a facial attack is made, defendants can still consider documents outside the pleadings including 'items subject to judicial notice.'" (citation omitted)); *Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *1, 3 (D.N.J. Feb. 23, 2022) (considering information posted to State Department websites in dismissing claim alleging an unreasonable delay in immigration processing); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (finding it appropriate to take judicial notice of documents that are the records of government agencies); Fed. R. Evid. 201. And regardless, in evaluating whether there is subject matter jurisdiction over Plaintiffs' Mandamus Act claim, the Court relies on the allegations in Plaintiffs' Complaint.

4

*Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id*. at 878–79 (internal quotation marks omitted) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks omitted) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

### III. DISCUSSION

#### A. Mandamus Act Claim (Count I)

Pursuant to the Mandamus Act, 28 U.S.C. § 1361, Plaintiffs seek to compel Defendants to discharge their statutory duty to administer and enforce the INA and adjudicate Plaintiffs' asylum application without undue delay. (Compl. ¶¶ 29–36). Defendants move to dismiss Plaintiffs' claim under the Mandamus Act, arguing that the Court lacks subject matter jurisdiction over this claim because Plaintiffs cannot establish any of the three elements for mandamus relief including (i) a clear and indisputable right to the relief they seek; (ii) that USCIS is violating a clear duty to act and (iii) that no adequate alternative remedy exists. (Mov. Br. at 12–18). In opposition, Plaintiffs contend that the Court does have subject matter jurisdiction over their Mandamus Act claim. (Opp. Br. at 7–9). For the reasons set forth below, the Court agrees with Defendants.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an exceptional remedy that can only be granted if a plaintiff has exhausted all other remedies. *Temple Univ. Hosp., Inc. v. U.S. Dept. of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021). To qualify for mandamus relief, a petitioner must show three elements: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.* (citing 33 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Judicial Review* § 8312 (2d ed. Apr. 2021 update)). The Third Circuit has explained that these elements are jurisdictional. *Id.*[2]

---

[2] As Defendants note (Mov. Br. at 12 n.30), courts have disagreed as to whether a failure to satisfy the elements of a mandamus claim under 28 U.S.C. § 1361 warrants dismissal for lack of jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). *Compare Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 57 (S.D.N.Y. 2020) (finding that court lacked subject matter jurisdiction to grant mandamus relief), *with Varol v. Radel*, 420 F. Supp. 3d

Here, Plaintiffs allege that they are entitled to mandamus relief because Defendants failed to adjudicate their asylum applications within the time frame set forth by Congress in 8 U.S.C. § 1158(d)(5)(A)(ii) and (iii). (Compl. ¶¶ 29–36). Those provisions direct the government to schedule an initial interview within 45 days of an asylum application and render a final administrative decision within 180 days, "in the absence of exceptional circumstances." *See* 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). However, Section 1158(d)(7) explicitly provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7). As Defendants point out (Mov. Br. at 13–14), and as countless other courts have recognized, because Section 1158(d)(7) expressly does not create a legally enforceable right or benefit against any officer of the United States or any agency, Plaintiffs cannot show the requisite "clear and indisputable right to relief" to obtain a writ of mandamus to have their asylum applications adjudicated within the time frames provided in Section 1158(d). In fact, multiple courts within this Circuit have held that a mandamus action is unavailable to compel action pursuant to a statute that does not provide a private right of action, or a clear and indisputable right. *Alvarez v. Raufer*, No. 19-3155, 2020 WL 5210992, at *2 (E.D. Pa. Sept. 1, 2020) (first citing *Lichtman v. United States*, No. 07-0010, 2007 WL 2119221, at *3 (E.D. Pa. June 8, 2007), *aff'd*, 316 F. App'x 116 (3d Cir. 2008) and then citing *Baranoski v. U.S. Att'ys Off.*, 215 F. App'x 155,

---

1089, 1096–99 (S.D. Cal. 2019) (finding that mandamus claim was more properly dismissed under Rule 12(b)(6)). However, the Third Circuit has indicated that the three elements necessary to obtain mandamus relief—"(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—are jurisdictional. *Temple Univ. Hosp., Inc.*, 2 F.4th at 132; *see also Soobzokov v. Att'y Gen. of the U.S.*, 515 F. App'x 98, 101 (3d Cir. 2013) (finding in the context of a challenge to prosecutorial discretion that "the District Court correctly concluded that it lacked jurisdiction to provide the relief sought" where plaintiff did not establish a clear and indisputable right to issuance of a mandamus writ). Because Defendants have challenged whether Plaintiffs have met the three elements necessary to obtain mandamus relief, the Court treats Defendants' motion to dismiss Plaintiffs' claim for mandamus relief as properly brought under Rule 12(b)(1).

7

156 (3d Cir. 2007)); *see also Banks v. U.S. Prob. Dep't for W. Dist. of Pa.*, 567 F. App'x 71, 74 (3d Cir. 2014); *see also Fangfang Xu*, 434 F. Supp. 3d at 56 (stating that "[i]t is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action," and "§ 1361 provides the Court with jurisdiction over mandamus actions only where the plaintiff seeks to compel an agent of the United States to perform a duty *owed to the plaintiff*." (alteration in original) (internal quotation marks and citation omitted)). As such, the Court joins the chorus of other courts across the country in concluding that Section 1158(d)(7) of the INA bars Plaintiffs from claiming any legally enforceable right to have [their] applications adjudicated within the timeframes provided in Section 1158(d) pursuant to the Mandamus Act.[3] *See, e.g.*, *Alvarez*, 2020 WL 5210992, at *2–3; *Fangfang Xu*, 434 F. Supp. 3d at 57 ("Because § 1158(d) expressly does not create a legally enforceable right or benefit against any officer of the United States or any agency, [d]efendants do not owe [p]laintiff a duty to adjudicate her application within the time frames provided in § 1158(d). Accordingly, the Court lacks subject matter jurisdiction over [p]laintiffs' claim for mandamus relief." (citations omitted)); *Ying Yu Liu v. Wolf*, No. 19-0410, 2020 WL 2836426, at *10 (S.D.N.Y. May 30, 2020) ("Defendants contend—and the Court agrees —that Section 1158(d)(7) of the INA bars [p]laintiffs 'from claiming any legally enforceable right to have [their] application[s] adjudicated within the provided timeframes.'" (citation omitted)); *Kizilyildirim v. Daum*, No. 23-3287, 2024 WL 1722277, at *3 (S.D. Tex. Mar. 29, 2024), *report and recommendation adopted*, No. 23-3287, 2024 WL 1719924 (S.D. Tex. Apr. 22, 2024) ("Because Section 1158(d)(7) prohibits [plaintiff] from enforcing the deadlines, he cannot show

---

[3] Notably, the Third Circuit has held that equivalent language in 8 U.S.C. § 1229(d)(2), another section of the INA, barred a due process claim for delay in a non-mandamus action arising under 8 U.S.C. § 1229(d)(1). *DiPeppe v. Quarantillo*, 337 F.3d 326, 333–34 (3d Cir. 2003).

8

the requisite 'clear right to relief' to obtain a writ of mandamus."); *Tawah v. Mayorkas*, No. 23-2920, 2024 WL 2155060, at *2 (D. Md. May 14, 2024).[4] In sum, because the Mandamus Act requires that a plaintiff demonstrate a "clear and indisputable right to relief," *Temple Univ. Hosp., Inc.*, 2 F.4th at 132, and because § 1158(d)(7) expressly and unambiguously asserts that the procedural provisions do not "create any substantive or procedural right or benefit that is legally enforceable," 8 U.S.C. § 1158(d)(7), the Court is persuaded that no clear right exists for Plaintiffs to have their asylum applications adjudicated within the timetables described in Sections 1158(d)(5)(A)(ii) and (iii) of the INA.[5] Accordingly, the Court must dismiss *without prejudice* Plaintiffs' Mandamus Act claim for lack of jurisdiction.. *Temple Univ. Hosp., Inc.*, 2 F.4th at 132.

Further, to the extent that Plaintiffs contend that they are entitled to mandamus relief because Defendants failed to adjudicate their asylum applications in a reasonably timely manner, as required by the APA, *see* 5 U.S.C. §§ 555 and 701, the Court disagrees. (Opp. Br. at 7–9). Plaintiffs cannot pursue a Mandamus Act claim where an "adequate alternative remedy exists."

---

[4] To support their argument that the Court has jurisdiction over their Mandamus Act claim, Plaintiffs cite to the court's decision in *Alvarez v. Raufer*, No. 19-3155, 2020 WL 1233565 (E.D. Pa. Mar. 12, 2020). (Opp. Br. at 8). There, a court sitting in the Eastern District of Pennsylvania found that it had jurisdiction over the plaintiff's Mandamus Act claim based on its view that Section 1158(d)(5) created a "nondiscretionary duty to adjudicate applications" that could be subject to claims of unreasonably delay. *Alvarez*, 2020 WL 1233565, at *3. However, in reaching this conclusion, the court does not seem to have considered Section 1158(d)(7) of the INA, which bars plaintiffs from claiming any legally enforceable right to have their applications adjudicated within the provided timeframes in Section 1158(d). And as described above, multiple courts have found that they lack jurisdiction over Mandamus Act claims to adjudicate asylum applications within the timeframes provided in Section 1158(d) because Section 1158(d)(7) expressly does not create a legally enforceable right or benefit against any officer of the United States or any agency and thus no "clear and indisputable right to relief," as is necessary to obtain mandamus relief. *Temple Univ. Hosp., Inc.*, 2 F.4th at 132; *Fangfang Xu*, 434 F. Supp. 3d at 57; *Ying Yu Liu*, 2020 WL 2836426, at *10. Further, as Defendants point out (Mov. Br. at 14 n.31), the court in *Alvarez* later granted summary judgment for the defendants, holding that the express disclaimer of a private right of action in Section 1158(d)(7) precluded mandamus relief as a matter of law. *Alvarez,* 2020 WL 5210992, at *2–3. Accordingly, Plaintiffs' reliance on *Alvarez*, 2020 WL 1233565, at *3 is unavailing and the Court finds that it lacks jurisdiction over Plaintiffs' claim for mandamus relief.

[5] Because Plaintiff fails to satisfy the first element required for mandamus relief based upon Defendants' failure to adjudicate their asylum applications within the timetable described in §§ 1158(d)(5)(A)(ii) and (iii) of the INA, and all three elements must be satisfied to qualify for such relief, the Court declines to address whether the remaining two elements are met. *Temple Univ. Hosp., Inc.*, 2 F.4th at 132.

*Temple Univ. Hosp., Inc.*, 2 F.4th at 132 (finding that mandamus jurisdiction statute did not provide a potential basis for subject-matter jurisdiction because "[plaintiff] ha[d] an adequate alternative remedy through administrative appeal to the Provider Reimbursement Review Board."). Thus, as other courts have recognized, because an alternative remedy is available to Plaintiffs under the APA—in claiming that Defendants failed to adjudicate their asylum applications in a reasonably timely manner—this Court cannot exercise subject matter jurisdiction over their Mandamus Act claim.[6] *See Sharkey* v. *Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (holding that a mandamus claim should be dismissed where it duplicated claims brought under the APA); *Fangfang Xu*, 434 F. Supp. 3d at 56; *Konde v. Raufer*, No. 23-4265, 2024 WL 2221227, at *5 (S.D.N.Y. May 16, 2024); *Arabzada v. Donis*, No. 23-0655, 2024 WL 1175802, at *5 n.1 (D.D.C. Mar. 19, 2024); *cf. Cohen v. Jaddou*, No. 21-5025, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (dismissing mandamus claim in an action where the plaintiff sought to compel adjudication of his green card application because an adequate remedy was available under the APA and thus "mandamus relief [was] not available"). This is true even though, as discussed below, Plaintiffs have "failed to adequately plead that alternative remedy." *Cohen*, 2023 WL 2526105 at *7. Accordingly, the Court must dismiss Plaintiffs' Mandamus Act claim for lack of jurisdiction *without prejudice*.

**B.    APA Claim (Count II)**

Plaintiffs next allege that Defendants failed to adjudicate their asylum applications in a reasonably timely manner, as required by the APA, *see* 5 U.S.C. §§ 555 and 701. (Compl. ¶¶ 37–46). Defendants argue that Plaintiffs have failed to state a claim under the APA because Plaintiffs have failed to show that Defendants failed to take discrete agency action that Defendants are

---

[6] In fact, even Plaintiffs acknowledge that for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive. (Opp. Br. at 8); *Lemus v. McAleenan*, No. 20-3344, 2021 WL 2253522, at *4 (D.N.J. June 3, 2021).

required to take and have failed to show that the Defendants' delay in adjudicating Plaintiffs' asylum applications is unreasonable as a matter of law. (Mov. Br. at 18–26). In opposition, Plaintiffs contend that they have adequately stated a claim under the APA because Defendants have unreasonably delayed adjudicating Plaintiffs' asylum applications. (Opp. Br. at 9–10). For the reasons set forth below, the Court agrees with Defendants.

The APA provides a cause of action where agency action is unreasonably delayed. *See* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). The APA further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).[7] To assess whether agency action has been "unreasonably delayed," courts in the Third Circuit look to four factors:

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action. Third, the court should assess the consequences of the agency's delay. Fourth, the court should consider any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

*Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998) (citations omitted); *see also Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns.*

---

[7] In their moving brief, Defendants contend that Plaintiffs fail to state claims under the APA because they cannot show that Defendants failed to take discrete agency action that Defendants are required to take. (Mov. Br. at 18). More specifically, they note that although Plaintiffs seek to compel Defendants to schedule asylum interviews for Plaintiffs within 30 days, such a timetable is not mandated by the INA. (*Id.* at 19). And they further point out that other courts reviewing similar asylum adjudications delay challenges have held that the "no private right of action" clause in Section 1158(d)(7) bars Plaintiffs from compelling compliance with the timetables set forth in Section 1158(d)(5). (*Id.* at 20). To be sure, as already discussed, because Section 1158(d)(7) does not expressly create a legally enforceable right or benefit against any officer of the United States or any agency, Plaintiffs cannot compel compliance with the statutory deadlines for adjudication of asylum applications set forth in § 1158(d). Nevertheless, as Defendants recognize (Mov. Br. at 20), Plaintiffs are still entitled to seek relief under the APA for asylum delay that is otherwise "unreasonable." (Compl. ¶ 42). As such, in evaluating Plaintiffs' claim under the APA the Court considers whether they have plausibly alleged unreasonably delayed administrative action.

11

*Comm.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting forth similar factors for reasonableness under the APA). As will be explained below, here, each factor weighs in favor of Defendants.[8]

### i. The Length of Time Elapsed

First, the Court looks to the length of time that has elapsed since the agency came under a duty to act. *Oil, Chem.*, 145 F.3d at 123. Here, Plaintiffs filed their asylum applications on March 1, 2021 and those applications have yet to be adjudicated. (Compl. ¶ 13). As such, Plaintiffs contend that their applications have been unreasonably pending for "over two years" despite the fact that the INA instructs that, absent exceptional circumstances, an initial interview of an asylum applicant shall commence within forty-five days of the filing of the application and that adjudication of the application shall be completed within 180 days of its filing. (Compl. ¶ 14); 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). Nevertheless, the Supreme Court has held that evidence of the passage of time cannot, standing alone, support a claim for unreasonably delayed administrative action. *Immigr. & Naturalization Servs. v. Miranda*, 459 U.S. 14, 18–19 (1982). And regardless, as other courts in this district have recognized, "[t]he case law, without drawing any bright lines, has found that delays of three to five years are not unreasonable." *Jamoussian*, 2022 WL 538424, at *2 (citing cases); *Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *10 (D.N.J. Mar. 4, 2024) (finding that delay of 18 months fell within the bounds of delay that other courts have found reasonable of between three and five years); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding a delay of almost five years not unreasonable); *De Oliveira v. Barr*, No. 19-1508, 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020) (noting that delay under four years was not

---

[8] Here, the Court finds that the record alleged in the Complaint is more than sufficient for the court to decide the unreasonable delay claim at the motion to dismiss stage. *See, e.g.*, *Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *2–4 (D.N.J. Feb. 23, 2022) (applying Third Circuit *Oil, Chem. & Atomic Workers Union* factors and granting motion to dismiss).

unreasonable). Because the delay in this case falls well within the bounds of delays that other courts have found reasonable the Court finds that the first factor weighs in favor of Defendants.[9]

### ii. The Delay Judged Against the Context of 8 U.S.C. § 1158(d)

Second, the Court looks to the reasonableness of the delay in the context of the statute authorizing the agency's action. *Oil, Chem.*, 145 F.3d at 123. To be sure, as already discussed, the INA specifies a timetable promoting the prompt adjudication of asylum applications. 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). Yet, Congress expressly declined to create any substantive or procedural right to enforce adjudication of an asylum application within those timeframes. *Id.* § 1158(d)(7). Accordingly, the timetables contained in § 1158(d)(5)(A) do not indicate that Defendants' adjudication of Plaintiffs' asylum applications has been unreasonably delayed, insofar as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables "render[s] them non-binding." *Baisheng Chen v. Wolf*, No. 19-9951, 2020 WL 6825681, at *5 (S.D.N.Y. Nov. 20, 2020); *see also Fangfang Xu*, 434 F. Supp. 3d at 53 (declining to "ascribe much significance to th[e] timetable [provided by § 1158(d)]" because the timetable "is not mandatory."); *Varol*, 420 F. Supp. 3d at 1097 ("While the statutory guidelines provide a clear expectation that the initial interview should commence within 45 days—with a final

---

[9] In opposition, Plaintiffs cite to case law to support the proposition that courts will generally find an unreasonable delay if the agency has failed to act for over two years. (Opp. Br. at 9–10 (citing cases)). Nevertheless, as Defendants point out (Reply at 9), these cases did not involve asylum adjudication delays but delays to other immigration programs. *See Karimushan v. Chertoff*, No. 07-2995, 2008 WL 2405729, at *2–5 (E.D. Pa. June 11, 2008) (evaluating whether there was unreasonable delay in adjudication of naturalization application); *Daraji v. Monica*, No. 07-1749, 2008 WL 183643, at *5–7 (E.D. Pa. Jan. 18, 2008) (same); *Assadzadeh v. Mueller*, No. 07-2676, 2007 WL 3252771, at *6 (E.D. Pa. Oct. 31, 2007) (same). And in the context of asylum applications, courts have found delays similar to those alleged here to be reasonable. *See, e.g.*, *Konde*, 2024 WL 2221227, at *5 ("Plaintiff has failed to state a claim under the APA on the grounds that the adjudication on her asylum application, which has been pending now for almost four years, has been unreasonably delayed."); *Xiaobin Xu v. Nielsen*, No. 18-2048, 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (concluding that the plaintiff failed to state a claim for unreasonable delay where his asylum application had been pending for less than five years). Further, as already stated above, "[t]he mere passage of time does not establish unreasonableness." *Jamoussian*, 2022 WL 538424, at *2 (citing *Miranda*, 459 U.S. at 18). As such, Plaintiffs' reliance on this case law is unavailing.

13

adjudication to be completed within 180 days—the plain language of 8 U.S.C. § 1158(d)(5)(A) clarifies that the timing requirements are not mandatory."). As such, the second factor favors Defendants.[10]

### iii. The Consequences of Defendants' Delay

Third, the Court looks to the consequences of Defendants' delay in adjudicating Plaintiffs' asylum applications. *Oil, Chem.*, 145 F.3d at 123. On this score, Plaintiffs emphasize that they have suffered "severe emotional, financial, and physical, hardship" and are "unable to make personal decisions within their family unit" due to the delay in the adjudication of their asylum applications. (Compl. ¶¶ 23 & 25). While the Court is empathetic to Plaintiffs' position and can readily infer how several years of waiting might take a toll on an asylum applicant, as other courts have recognized, "the painful consequences of [] delay are inherent in our immigration system." *Azam*, 2024 WL 912516, at *10; *Fangfang Xu*, 434 F. Supp. 3d at 54 (noting that although the plaintiff asserted she is not receiving the full rights she is entitled to as a seeker of asylum who has a meritorious claim, "this sort of prejudice is inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved."); *Liuqing Zhu v. Cissna*, No. 18-9698, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (stating that an applicant's inability to plan her future or travel outside of the United States constituted risk that was "inherent in the process of seeking asylum"). The Court cannot "compel agency action

---

[10] Further, as Defendants point out (Mov. Br. at 19–20 & 24), the timetables contained in § 1158(d)(5)(A) specifically direct the government to schedule an initial interview within 45 days of an asylum application and render a final administrative decision within 180 days, in the absence of "*exceptional circumstances*." *See* 8 U.S.C. § 1158(d)(5)(A)(ii)-(iii). In other words, as other courts have pointed out, although Congress articulated a timeline for the adjudication of asylum applications in 8 U.S.C. 1158(d)(5)(A), it also gave USCIS the leeway to adjudicate applications at its discretion when exceptional circumstances arise. *See* 8 U.S.C. § 1158(d)(5)(A); *Yueliang Zhang v. Wolf*, No. 19-5370, 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020). And here, "Plaintiff[s] ha[ve] pleaded no facts suggesting that Defendants have abused their discretion in processing [their asylum] application[s], only that [they are] unsure what is taking so long, and that Defendants should hurry it up." *Azam*, 2024 WL 912516, at *10. This further indicates that the reasonableness of the delay in the context of the statute authorizing the agency's action favors Defendants.

where the result would be merely to expedite the consideration of a plaintiff's request ahead of others." *Azam*, 2024 WL 912516, at *10 (internal quotation marks and citation omitted). This is particularly so given that many asylum applicants do not have the resources to try and skip the line. *See Fangfang Xu*, 434 F. Supp. 3d at 55 ("[G]ranting relief to [p]laintiff, an asylum petitioner who engaged the help of legal counsel to bring this suit, might have the perverse effect of incentiviz[ing] defendants to prioritize those asylum applicants who have the wherewithal to retain private counsel and to bring suit in District Court." (internal quotation marks and citation omitted)). Further, as Defendants point out (Mov. Br. at 24), Plaintiffs are permitted to live in the United States without fear of being removed to their home country while their asylum applications are pending, and can even apply for employment authorization during the pendency of their applications. 8 U.S.C. § 1158(d)(2); 8 C.F.R. § 208.7(a)–(b). Accordingly, this factor also weighs against the delay being unreasonable.

### iv. Administrative Difficulties

Fourth, the Court considers any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources. *Oil, Chem.*, 145 F.3d at 123. Here, nothing in the Complaint establishes plausibly that delays have resulted from anything other than limited administrative resources and a large caseload of asylum applications that have yet to be adjudicated. As other courts in this district have recognized, "[u]nder such circumstances, to grant relief would accomplish little beyond pushing one applicant ahead of others equally deserving, scrambling agency priorities[,] and incentivizing litigation." *Jamoussian*, 2022 WL 538424, at *3; *see also Fangfang Xu*, 434 F. Supp. 3d at 55 ("The effect of leapfrogging [p]laintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who

15

are equally deserving of prompt adjudication."); *Pesantez v. Johnson*, No. 15-1155, 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) ("[T]he facts of this case do not counsel in favor of a remedy that would, if it did anything, move plaintiff's application to the front of the line at the expense of other applicants whom she has not alleged are less deserving of prompt adjudication."). "A court's perception of the equities in one case is no substitute for the agency's expertise in allocating its resources overall." *Jamoussian*, 2022 WL 538424, at *3; *Azam*, 2024 WL 912516, at *11 ("Considering the broad statutory deference owed to the State Department in processing visa applications, the Court will not wade into [d]efendants' internal adjudicatory processes for determining how to process the mountain of visa applications more efficiently."). Accordingly, the fourth factor also weighs against a finding of unreasonable delay.

In sum, Plaintiffs have failed to state a claim under the APA on the grounds that the adjudication of their asylum applications has been unreasonably delayed. *See Nielsen*, 2018 WL 2451202, at *2 (concluding that the plaintiff failed to state a claim for unreasonable delay where his asylum application had been pending for nearly five years). The Court thus grants Defendants' motion to dismiss Plaintiffs' APA claim. This dismissal is *without prejudice* to renewal, should Plaintiffs' applications remain pending to an unreasonable degree. *Konde*, 2024 WL 2221227, at *5.

    **C.**    **Fifth Amendment Due Process Claim (Count III)**

Plaintiffs next allege that Defendants' failure to adjudicate their asylum applications runs afoul of their Fifth Amendment procedural due process rights. (Compl. ¶¶ 47–52). Defendants argue that Plaintiffs' procedural due process claim must fail because, among other things, they have not established the deprivation of a protected liberty or property interest. (Mov. Br. at 26–28). Specifically, Defendants contend that Plaintiffs have failed to plead that they have a property

16

interest in the benefit of asylum, let alone in having their asylum applications adjudicated by a certain timeframe. (*Id.* at 28). In opposition, Plaintiffs contend that they are entitled to procedural due process and that Defendants have violated their due process rights by failing to reasonably adjudicate their asylum applications. (Opp. Br. at 11). For the reasons set forth below, the Court agrees with Defendants.

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, (1998) (internal quotation marks and citation omitted). The "touchstone" of due process is protecting individuals against arbitrary government action, whether from "denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* at 845–46. Regardless of citizenship, the Due Process Clause of the Constitution protects everyone within the territory of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). They must be afforded the opportunity to "be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted). However, a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie. *See Kerry v. Din*, 576 U.S. 86, 90 (2015); *see also Riley v. Carroll*, 200 F. App'x 157, 158 (3d Cir. 2006) ("To succeed on a due process claim, Riley must first demonstrate that he was deprived of a liberty interest.") (citing *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)).

Here, the Court finds that Plaintiffs have failed to adequately allege a due process violation. As an initial matter, Plaintiffs have failed to establish a cognizable deprivation of a protected

17

liberty or property interest because the plain language of 8 U.S.C. § 1158(d)(7) expressly disclaims any substantive or procedural rights under the statute. *See* 8 U.S.C. § 1158(d)(7) ("Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."). The Sixth Circuit's decision in *Vang v. Gonzales*, 237 F. App'x 24 (6th Cir. 2007), is instructive on this point. In *Vang*, the Sixth Circuit considered whether the government's 14-year delay in completing the plaintiffs' asylum proceedings deprived them of due process. *Vang*, 237 F. App'x at 31. In claiming that the government had violated their due process rights, the plaintiffs pointed to the 45-day timeframe set out in § 1158(d)(5)(A)(ii). *Id.* Nevertheless, the Sixth Circuit rejected the plaintiffs' reliance on that timeframe, noting that the plain language of § 1158(d)(7) clarifies that "'[n]othing in this subsection shall be construed to create any substant[ive] or procedural right or benefit . . . .'" *Id..* Accordingly, the Sixth Circuit found that the government's delay in scheduling or conducting immigration proceedings did not violate due process. The same conclusion is warranted in this case. *See, e.g.*, *Varol*, 420 F. Supp. 3d at 1099 ("Here, the [p]laintiff has not suffered a cognizable deprivation of rights because the plain language of § 1158(d)(7) expressly disclaims any substantive or procedural rights under the statute."); *Fangfang Xu*, 434 F. Supp. 3d at 58 (finding that plaintiff failed to allege due process violation since § 1158(d)(7) expressly does not create a substantive or procedural right).

Further, the Third Circuit has found that even greater delays in adjudication in the immigration context did not amount to due process violations. For example, in *Mudric v. Att'y Gen. of the U.S.*, 469 F.3d 94 (3d Cir. 2006), Mudric applied for asylum in 1993; hearings were held in August 1997 and February 1998. *Mudric*, 469 F.3d at 96. Because conditions in his native Serbia had changed during the approximately four years between the filing of his petition and its

18

processing by the government, Mudric alleged that the government's delay violated his due process rights. *Id.* at 98. Similarly, he asserted that an eight-year delay in processing his mother's petition to remove conditions on her permanent residence violated due process. *Id.* In rejecting those claims, the Third Circuit found that "the various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible." *Id.* at 99. Accordingly, the Third Circuit concluded that the government delays did not cause any constitutional injury "because Mudric simply had no due process entitlement to the wholly discretionary benefits of which he and his mother were allegedly deprived, much less a constitutional right to have them doled out as quickly as he desired." *Id.* Likewise, here, the Court cannot conclude that Defendants' delay in adjudicating Plaintiffs' asylum applications plausibly violates due process where the Third Circuit has made clear that "the various discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible." *Id.* Relying on the Third Circuit's decision in *Mudric*, other courts have reached similar conclusions. *See, e.g.*, *Varol*, 420 F. Supp. 3d at 1099 (citing *Mudric* and noting that "'the government's delay in scheduling or conducting immigration proceedings does not violate due process.'" (citation omitted)); *Fangfang Xu*, 434 F. Supp. 3d at 58–59 (citing *Mudric* and finding that plaintiff failed to allege due process violation based on three-year period of delay and noting that courts have found comparable and even greater delays in adjudication in the immigration context not to be due process violations); *see also Arostegui v. Holder*, 368 F. App'x 169, 172 (2d Cir. 2010) (finding that a five-year delay in initiating removal proceedings did not violate the petitioner's due process rights). Accordingly, the Court sees no reason to depart from this case

law and finds that, because Plaintiffs have not suffered a cognizable deprivation of rights, Plaintiffs have failed to adequately allege a due process violation. That claim is dismissed *without prejudice*.

### D. Declaratory Judgment Act Claim (Count IV)

Finally, Plaintiffs seek a declaration pursuant to the Declaratory Judgment Act that Defendants violated the INA and breached their statutory duties. (Compl. ¶¶ 53–57). However, the Declaratory Judgment Act "is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law." *MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at *2 (D.N.J. May 19, 2021) (citing *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013)). Because this Court lacks subject-matter jurisdiction over Plaintiffs' Mandamus Act claim and because Plaintiffs fail to state any plausible APA or Due Process claims, there is no cause of action under which Plaintiffs' Declaratory Judgment Act claim can proceed. As a result, their Declaratory Judgment Act claim and request for declaratory relief must also be dismissed. *See ECC Enter. Ltd. v. TD Bank, N.A.*, No. 23-3760, 2024 WL 1623059, at *2 (D.N.J. Apr. 15, 2024); *Honkala v. U.S. Dep't of Hous. & Urb. Dev.*, No. 21-0684, 2022 WL 282912, at *11 (E.D. Pa. Jan. 31, 2022).

### IV. CONCLUSION

Based on the foregoing, Defendants' Motion (D.E. No. 6) is **GRANTED** and Plaintiffs' Complaint is dismissed in its entirety *without prejudice*. An appropriate Order accompanies this Opinion.

Dated: July 2, 2024                                                     *s/ Esther Salas*
                                                                        **Esther Salas, U.S.D.J.**